STOULIG, Judge.
This is an appeal from a judgment awarding the plaintiff the contractually stipulated damage of $15,000[1] for the defendant’s breach of its contract dated January 15, 1970 and a rejection of defendant’s reconventional demand for an identical claim against plaintiff.
On January 15, 1970, plaintiff and defendant, competitors in the business of blending and selling chemical products for use in oil fields, contracted to eliminate competition between them in this area by having Teoc, Inc., blend or manufacture the products and M-Chem, Inc., sell them. The essence of the agreement which plaintiff claims M-Chem breached is the following :
“4. Further, in consideration for DISTRIBUTOR giving to MANUFACTURER the right to manufacture all of DISTRIBUTOR’S products at MANUFACTURER’S option, and based on the price arrangement as outlined below, the MANUFACTURER shall give to DISTRIBUTOR the exclusive right to sell all of MANFACTURER’S products in the Louisiana oilfields. This exclusive distributorship is limited only to the oil *614 field business and does not include other industries.”
M. Guy Hall, plaintiff’s president, testified Teoc had four employees when this agreement was signed. However the sales aspect of its operation needed development and he had the option of either hiring a salesman to generate more business from the oil field industry or merging with M-Chem. In his opinion M-Chem had a superior sales organization and Teoc had a higher quality product.
After the contract was signed Hall advised Teoc’s customers of the agreement so that future orders could be placed through M-Chem. In consideration for relinquishing these accounts, Teoc was to exclusively blend all oil field products for M-Chem and was to receive 30 percent of the gross profit from their sales together with the reimbursement of its production costs and a blending fee of five cents a drum. Hall anticipated Teoc’s production would increase due to the demand generated by M-Chem’s sales. However Teoc’s records reflect that in March 1970 it blended a total of 147 drums as compared with a 168-drum production in 1969. It appears that during the few months this contract was in existence (January to June, 1970) Teoc’s production was consistently lower than the comparable period during the preceding year.
Due to the lack of business income, Hall was forced to terminate the services of Teoc’s chemist Neil Wolf and shortly thereafter its blender Jules Bruce quit. Almost immediately, M-Chem hired both of these employees. In May 1970, while the contract was still operative, M-Chem leased a plant and began setting up an operation for blending products.
On June 2, 1970, Hall wrote a letter to Irby Chatelain, president of M-Chem, in which he charged M-Chem representatives with selling products not blended by Teoc, advised Teoc would no longer honor the agreement, and demanded liquidated damages for the breach of contract. By this time M-Chem had the customer list of Teoc and was in the process of setting up its own plant.
Chatelain denied that M-Chem used any other blender but Teoc after the agreement was signed. Before entering into the merger, M-Chem’s oil field products had been blended by Field Chemical Company, Inc., and the evidence indicates M-Chem continued having Field to do the blending after this contract became effective. It was agreed between Hall and Chatelain that the inventory of M-Chem products on hand with Field at the time the contract was signed would be sold by M-Chem to avoid any loss by Field.
C. S. Field, president of Field Chemical Company, Inc., testified that when Chate-lain informed him of the contract with Teoc, he advised that it would not disrupt the business arrangement between Field and M-Chem. Field affirmed the fact that it not only sold oil field products that had been in its inventory and blended prior to January IS, 1970, but that it also blended materials during the period when Teco was to have the exclusive right to blend for M-Chem. To corroborate this testimony, Teoc subpoenaed the records of Field Chemical Company, Inc., which established that during the period March 23 through April 27, 1970, Field Chemical invoiced M-Chem for 85 drums and 25 six-gallon cans of DW-10, a cleaner.[2] Field estimated his company had an inventory of 20 drums of this material when the disputed contract was signed; therefore, the quantity blended in excess of this amount by Field during March and April of 1970 establishes the breach by M-Chem of Teoc’s exclusive contractual blending right. Field further stated that after April 27 and dur *615 ing the months of May, June, and July his company sold raw materials to M-Chem’s blending plant.
In written reasons for judgment the trial court stated the testimony of Mr. Field was convincing evidence the defendant was having chemicals blended by someone other than plaintiff, in violation of the agreement giving plaintiff this exclusive right and not within the scope of the exception contemplated between the parties at the time the contract was confected. We fully agree with his evaluation of the evidence.
For the reasons assigned, the judgment appealed from is affirmed; costs to be borne by appellant.
Affirmed.

. The contract provides in part:
“15. It is specifically understood that each of the parties of this contract are entitled to the specific performance for the terms and conditions of this contract, or in the event of a breach thereof, to injunctive relief and to liquidate damages in the amount of Fifteen Thousand and No/100 ($15,000.00) Dollars, at the option of the aggrieved party.”

. It was during this same period and immediately prior thereto that Chatelain, in response to Hall’s inquiry as to the cause of the low volume of sales and lack of orders, stated the aeoounts were not buying because of the adverse environmental effect of the Chevron and Shell oil rig fires.